IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2017 JUN 30 PM 2:52

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
        DEPUTY

KEITH BELL, PH. D.,
    Plaintiff,

-vs-

THE MOAWAD GROUP, LLC and
TREVOR MOAWAD,
    Defendants.

CAUSE NO.:
A-17-CA-00073-SS

## ORDER

BE IT REMEMBERED on the 6th day of June 2017, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court are Defendants' Motion to Dismiss [#5], Plaintiff's Response [#11] in opposition, and Defendants' Reply [#15] in support, as well as Plaintiff's Motion for Limited Jurisdictional Discovery [#13], Defendants' Response [#14] in opposition, and Plaintiffs' Reply [#17] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This case involves claims for copyright infringement. Plaintiff Keith Bell, a resident of Texas, describes himself as an "internationally recognized sports psychologist and sports performance consultant." Am. Compl. [#10] ¶ 9. He is also the author of the copyrighted book, *Winning Isn't Normal. Id.* ¶ 13. Defendants The Moawad Group, LLC (Moawad Group) and Trevor Moawad (together, Defendants) provide consulting services in the fields of sports performance, mental condition, and brand management to professional and collegiate athletes. *Id.* ¶ 26. Trevor Moawad is a resident of Arizona and the sole manager of the Moawad Group. *Id.*

✓

¶ 4. The Moawad Group, which was formed in 2014, is an Arizona limited liability company with its principle place of business in Arizona. *Id.* ¶ 2; *see also* Mot. Dismiss [#5-1] (Trevor Moawad Decl.) ¶ 5.

Bell provides a litany of factual allegations to prove Defendants have sufficient minimum contacts with Texas to justify the exercise of personal jurisdiction. According to Bell, both Defendants have "a long-standing and close business relationship with a renowned sports performance center located in Texas" known as the Michael Johnson Performance (MJP). *Id.* ¶ 31. Indeed, Defendants admit to "[p]erforming limited services for MJP on a couple occasions in [the past] two years." Reply [#15] at 7. MJP displays Trevor Moawad's staff biography on its website as providing "mental skills." Am. Compl. [#10-1] Ex. F (MJP Staff Website) at 18–20. Moreover, the Moawad Group's website displays a testimonial from the owner of MJP. *Id.* Ex. D (Moawad Group's Website) at 10.

Regarding Trevor Moawad's contacts with Texas, Bell alleges that between 2002 and 2006, Trevor Moawad served as a sports psychologist "and/or mental conditioning coordinator" for the women's soccer team at Texas A&M University. Am. Compl. [#10] ¶ 32; Reply [#15-1] Ex. (Trevor Moawad Supp. Decl.) ¶¶ 8–9. The Moawad Group's website displays testimony from a member of the women's soccer coaching staff at Texas A&M. Am. Compl. [#10] ¶ 34. In 2012, while working as an employee of a different company, Trevor Moawad traveled with the University of Alabama football team to a college football bowl game in Texas. *Id.* ¶ 33; Reply [#15] at 7. In 2013, Trevor Moawad traveled to Austin, Texas to promote his consulting services at a South by Southwest panel. Am. Compl. [#10] ¶ 35; *id.* [#10-1] Ex. G (SXSW Ad) at 22. Bell further alleges Trevor Moawad, in conjunction with the Moawad Group, maintains public social media accounts on Twitter, Instagram, and Facebook to promote their consulting services; at

least some of their followers on these social media accounts reside in Texas. Am. Compl. [#10] ¶¶ 38–40.

In this lawsuit, Bell alleges Defendants reproduced, displayed, and distributed a 219-word excerpt from Bell's *Winning Isn't Normal* on Twitter, Instagram, and Facebook in violation of Bell's copyright. *Id.* ¶ 43. Bell alleges this excerpt, which remained posted on Defendants' social media accounts from May 11, 2016, to December 6, 2016, represents "the heart of [his] work" in *Winning Isn't Normal*. *Id.* ¶¶ 43–44. According to Bell, Defendants posted the image without Bell's authorization and used it to promote their services and interact with their followers, some of whom live in Texas. *Id.* ¶ 45. Specifically, Bell maintains "one or more Texas residents" who follow Defendants on social media "interact[ed] with the infringing posts through retweets, likes, shares, and comments." *Id.* ¶ 46.

On February 3, 2017, Bell filed this lawsuit in the Western District of Texas. *See* Compl. [#1]; *see also* Am. Compl. [#10]. Thereafter, Defendants filed a motion to dismiss for lack of personal jurisdiction and improper venue; in the alternative, Defendants request this case be transferred to the District of Arizona.[1] Mot. Dismiss [#5] at 1. The parties have fully briefed the motion, and it is now ripe for the Court's consideration.

---

[1] Though Bell filed an amended complaint after Defendants filed their motion to dismiss, the amended complaint does not render the motion to dismiss moot. *See* Am. Compl. [#10]. Whether the filing of an amended complaint renders a motion to dismiss moot is discretionary. *See, e.g., Rodriguez v. Xerox Business Sols., LLC*, No. EP-16-CV-41-DB, 2016 WL 8674378, at *1 (W.D. Tex. June 16, 2016) ("A plaintiff's filing of an amended complaint *may* render moot a pending motion to dismiss.") (emphasis added). The amended complaint does not add new parties or claims, but simply elaborates on the factual allegations contained in the original complaint. Moreover, the parties' conduct since the amended complaint has been filed suggests they do not believe the amended complaint rendered the motion to dismiss moot. Bell filed his amended complaint on the same day he filed his response to the motion to dismiss, and Defendants have since filed a reply in support of their motion to dismiss.

3

Analysis

I.  **Personal Jurisdiction**

Defendants move to dismiss Bell's complaint based on lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). To determine whether a federal district court has personal jurisdiction over a nonresident defendant, the court considers first whether exercising jurisdiction over the defendant comports with due process. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). If the requirements of due process are satisfied, the court then determines whether the exercise of jurisdiction is authorized by the jurisdictional "long-arm" statute of the state in which the court sits. *Id.* Because the Texas long-arm statute has been interpreted as extending to the limit of due process, the two inquiries are the same for district courts in Texas. *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE §§ 17.001–.093.

The Due Process Clause requires a nonresident defendant be properly subject to the personal jurisdiction of the court in which the defendant is sued. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The Supreme Court has articulated a two-pronged test to determine whether a federal court may properly exercise jurisdiction over a nonresident defendant: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

A defendant's "minimum contacts" may give rise to either general personal jurisdiction or specific personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Freudensprung*, 379 F.3d at 343. A court exercises general jurisdiction over the defendant if the defendant has "continuous and systematic contacts" with

4

the forum, regardless of whether those contacts are related to the cause of action asserted in the case. *Id.* Specific jurisdiction, by contrast, is based on the proposition "that 'the commission of some single or occasional acts of the [defendant] in a state' may sometimes be enough to subject the [defendant] to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Int'l Shoe*, 326 U.S. at 318).

The plaintiff has the burden of making a prima facie case by showing a defendant has sufficient "minimum contacts" with the forum state to justify the state's exercise of either specific or general jurisdiction. *Freudensprung*, 379 F.3d at 343. If the plaintiff does so, the burden shifts to the defendant to show such an exercise offends due process because it is not consistent with traditional notions of fair play and substantial justice. *Id.* Finally, when a court rules on a 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept the non-moving party's jurisdictional allegations as true and resolve all factual disputes in its favor. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).

Because "[e]ach defendant's contacts with the forum State must be assessed individually," *Calder v. Jones*, 465 U.S. 783, 790 (1984), the Court addresses Bell's claims against the Moawad Group and Trevor Moawad in turn.

### A. The Moawad Group

Bell advances two reasons in support of the Court's exercise of jurisdiction over the Moawad Group. First, the crux of Bell's allegation is that the Moawad Group posted an allegedly infringing image on Facebook, Instagram, and Twitter, and at least some of its followers on social media live in Texas. Second, Bell points to the Moawad Group's "long-standing and close

5

business relationship" with Texas-based MJP. The Court analyzes these allegations to determine whether they support either general or specific jurisdiction over the Moawad Group.

### 1. General Jurisdiction

To constitute continuous and systematic contacts sufficient to establish general jurisdiction, a defendant must be "at home" in the forum state. *Daimler AG*, 134 S. Ct. at 760. The Supreme Court has held a corporation is "at home" in the state of incorporation and principal place of business. *Id.* "It is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (citing *Daimler AG*, 134 S. Ct. at 760).

The Moawad Group is incorporated under Arizona law and its principal place of business is in Arizona. Its sole managing member is Trevor Moawad, who resides in Arizona. Thus, for general jurisdiction to exist over the Moawad Group, it must fit into a "small, undefined category of other situations in which a foreign corporation is nonetheless 'essentially at home' in a forum." *Gonzalez v. Seadrill Americas, Inc.*, No. 3:12-CV-00308, 2014 WL 2932241, at *3 (S.D. Tex. June 27, 2014). There is no evidence the Moawad Group maintains employees in Texas, owns real estate in Texas, or pays taxes in Texas. The simple fact that the Moawad Group posted an allegedly infringing image on its social media accounts, which was accessed in Texas, does not support a finding of general jurisdiction. *See, e.g., Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) ("Though the maintenance of a website is, in a sense, a continuous presence everywhere in the word, the cited contacts of [the defendant] with Texas are not in any way 'substantial.'"); *Britton v. City of Dubuque*, No. A-15-CV-0033-LY-ML, 2015 WL 2384397, at *6 (W.D. Tex. May 18, 2015) ("A showing that a defendant operates websites that can be

accessed in Texas (as well as any other State) is insufficient to establish a 'substantial' presence in Texas."). Moreover, the Moawad Group's occasional work with MJP over the last few years is insufficient to constitute "continuous and systematic" contacts with the state. Because Bell has failed to make a prima facie showing that the Moawad Group is "at home" in Texas, this Court lacks general jurisdiction over the Moawad Group.

  2. **Specific Jurisdiction**

In the Fifth Circuit, courts generally look to three factors in analyzing specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

A court may exercise specific jurisdiction over a nonresident defendant who "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Electrosource, Inc. v. Horizon Battery Techns., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (internal citation omitted). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* (internal quotation nd citation omitted).

The gravamen of Bell's argument for specific jurisdiction is that the Moawad Group purposefully availed itself of the privileges of conducting business in Texas by posting the allegedly infringing image on its social media accounts, which are followed by at least some Texas residents. The parties agree two tests are relevant to the inquiry of whether the Moawad

Group purposefully availed itself of the benefits of conducting activity in Texas: the "sliding scale" test first articulated in *Zippo Manufacturing Company v. Zippo Dot Com., Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), and the "effects" test established in *Calder*.

In *Mink v. AAAA Development LLC*, the Fifth Circuit expressly adopted the "sliding scale" test to determine whether the operation of an website can support minimum contacts with the forum state necessary for the exercise of personal jurisdiction. 190 F.3d 333, 336 (5th Cir. 1999). It explained the "sliding scale" test in *Revell* by stating:

> A "passive" website, one that merely allows the owner to post information on the internet, is at one end of the scale. It will not be sufficient to establish personal jurisdiction. At the other end are sites whose owners engage in repeated online contacts with forum residents over the internet, and in these cases personal jurisdiction may be proper. In between are those sites with some interactive elements, through which a site allows for bilateral information exchange with its visitors. Here, we find more familiar terrain, requiring that we examine the extent of the interactivity and nature of the forum contacts.

317 F.3d at 470 (citing *Mink*, 190 F.3d at 336).

Thus, the relevant inquiry is the degree to which the Moawad Group's social media accounts are interactive. In *Mink*, the Fifth Circuit concluded the website would not support a finding of minimum contacts because it only solicited customers and provided contact information, including a toll-free number and an e-mail address. 190 F.3d at 337. It did not allow visitors to place orders online. *Id.* The Fifth Circuit distinguished the website in *Mink* from the "bulletin board" website in *Revell*, which permitted individuals to send and receive information that others posted. 317 F.3d at 471. Because a visitor could participate in an open forum hosted by the website, the Fifth Circuit concluded the bulletin board was interactive, and the court was therefore tasked with "examin[ing] the extent of interactivity and nature of the forum contacts." *Id.* at 470, 472.

In this case, the Moawad Group's social media accounts are not "open forums" where any internet user can post material on these accounts. Nevertheless, these accounts permit some level of interaction between the Moawad Group and its followers. As Bell points out, "[u]sers of Defendants' Facebook, Twitter, and Instagram pages can and do use the pages to share, like, and send Defendants' comments on the material Defendants regularly post to promote their services[.]" Resp. [#11] at 15. At minimum, the Moawad Group's social media accounts fall somewhere "[i]n between" passive and wholly interactive sites. The Court must therefore examine the extent of the interactivity and the nature of the forum contacts, and in doing so, consider the parties' arguments regarding the "effects" test.

Bell argues "[t]he *Calder* 'effects' framework evidences that Defendants purposefully availed themselves of Texas law and privileges." Resp. [#11] at 13. But the Moawad Group maintains the Fifth Circuit has limited the "effects" test "solely to libel/defamation claims or intentional and unintentional torts that caused death or serious physical harm to the Plaintiff in the forum state." Mot. Dismiss [#5] at 10 (citing *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 629–30 (5th Cir. 1999)). In *Guidry*, the Fifth Circuit held the "effects" test was not intended to be limited to defamation cases. *Guidry*, 188 F.3d at 629. The *Guidry* court, presented with claims involving death or serious harm, concluded "the 'effects' test of intentional and nonintentional torts causing death or serious physical harm are as 'pronounced' as the merely economic and emotional consequences of libel." *Id.* at 629. Contrary to the Moawad Group's construction, the Court does not read *Guidry*'s extension of the "effects" test to torts involving serious harm or death as a limitation on the test's applicability to claims for copyright infringement. Indeed, district courts in this circuit have applied the *Calder* "effects" test to copyright infringement claims. *See, e.g., Illustro Sys. Intern., LLC v. Int'l Bus. Machs. Corp.*, No. 3:06-CV-1969-L,

2007 WL 1321825, at *8–9 (N.D. Tex. May 4, 2007); *Isbell v. DM Records, Inc.*, No. 3:02-CV-1408-G, 2004 WL 1243153, at *10 (N.D. Tex. June 4, 2004) (collecting cases).

In *Calder*, the Supreme Court upheld personal jurisdiction over a Florida-based reporter and editor of a Florida-based magazine in a libel suit brought by a California plaintiff in California. 465 U.S. at 791. The Supreme Court held the exercise of personal jurisdiction was proper because the defendants had knowingly engaged in tortious activity outside the state that had an effect in the forum state. *Id.* at 790. The Supreme Court reasoned that, because the defendants committed an intentional tort, knowing it would have a potentially devastating impact upon the plaintiff, and knowing that the plaintiff would be primarily injured in the state in which she lived and worked, and in which the magazine had its largest circulation, the defendants "must reasonably anticipate being haled in court there to answer for the truth of the statements made in their article." *Id.* at 789 (internal quotation omitted).

The Court finds Defendants could not reasonably anticipate being haled into court in Texas by posting the allegedly infringing image on their social media accounts. Though Bell argues the Moawad Group's actions were directed at Texas because at least some of their followers reside in Texas, he points to no evidence to suggest these posts were in any way directed to Texas, specifically curated for a Texas audience, or that the Moawad Group knew Bell resided in Texas. *See, e.g., Frees, Inc. v. McMillian*, No. 05-1979, 2007 WL 2701161, at *3 (W.D. La. Sept. 7, 2007) (finding personal jurisdiction over a corporation in a copyright infringement case where the corporation's agent "would have been well aware that [the plaintiff] was a Louisiana corporation"); *Johnson v. Tuff N Rumble Mgmt., Inc.*, No. 99-1374, 1999 WL 1201891, at *5 (E.D. La. Dec. 15, 1999) (applying the "effects" test to a copyright infringement case where the defendant resided in another state, and concluding "specific jurisdiction exists

over [the defendant] in this district because [the defendant] intentionally aimed its conduct at Louisiana, knowing plaintiffs would feel the brunt of the injury here"); *Sec. Alarm Financing Enter., L.P. v. Nebel*, 200 F. Supp. 3d 976, 985 (N.D. Cal. 2016) (concluding the defendant's social media posts were insufficient to establish personal jurisdiction where the plaintiff offered no evidence that the defendant's posts "were in any way directed or targeted at California or a California audience"). Though Bell alleges a Texas resident independently "shared" the image the Moawad Group posted, such "random, fortuitous, or attenuated contacts, or [] the unilateral activity of another party or a third person" do not pass muster under the purposeful availment requirement. *See Electrosource, Inc.*, 176 F.3d at 871.

Nevertheless, the Court is mindful that "the 'effects' test is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum." *Revell*, 317 F.3d at 473. Indeed, the Fifth Circuit has recognized that "[e]ven a single, substantial act directed towards the forum can support specific jurisdiction." *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990). Bell contends the Moawad Group has minimum contacts with Texas because it has provided occasional consulting services for MJP over the past several years. Even assuming these allegations are sufficient to support a finding that the Moawad Group purposefully directed its activities toward Texas in working with MJP, the Court must still determine whether the present controversy arises out of and is related to the Moawad Group's activity in Texas.

To establish personal jurisdiction over a nonresident defendant, a plaintiff must also show his cause of action arises out of or results from the defendant's forum-related contacts. *See Gerber*, 587 F.3d at 759. On this front, Bell's amended complaint falls far short of establishing a prima facie case for personal jurisdiction. There is no allegation or evidence in the record that the

present controversy arose from the Moawad Group's occasional work with MJP. Because Bell failed to demonstrate the nexus between the Moawad Group's contacts with Texas and his cause of action, the Court need not reach the question of whether exercising jurisdiction would be unfair or unreasonable.

### B. Trevor Moawad

Bell's jurisdictional allegations as to Trevor Moawad in his individual capacity fall into two general categories. First, Bell alleges that Trevor Moawad, as a member of the Moawad Group, is subject to personal jurisdiction because of the actions he took in Texas while acting as a corporate officer for the Moawad Group, including his work with Texas-based MJP and his involvement in the Moawad Group's social media accounts. Trevor Moawad maintains, however, that the "fiduciary shield" doctrine should apply to prevent the attribution of the Moawad Group's contacts with Texas to him. Second, Bell alleges Trevor Moawad is subject to jurisdiction because of the actions he took in Texas prior to the Moawad Group's formation, including (1) his work as a sports psychologist for the Texas A&M women's soccer team between 2002 and 2006; (2) his travel to Texas with the University of Alabama football team in 2012; and (3) his travel to Austin, Texas in 2013 to speak at a South by Southwest panel.

#### 1. Fiduciary Shield Doctrine

Trevor Moawad invokes the fiduciary shield doctrine to defeat Bell's first category of jurisdictional allegations. Under the fiduciary shield doctrine, an "individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). Put another way, "jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation." *Lehigh Valley Indus., Inc.*

v. *Birenbaum*, 389 F. Supp. 798, 803–04 (S.D.N.Y. 1975). Though the general rule is that jurisdiction over a corporate officer cannot be predicated on the defendant's contacts as a corporate representative, the Fifth Circuit has recognized two exceptions to the fiduciary shield doctrine. First, a court may disregard the corporate form and exercise jurisdiction over an individual officer if the corporation is the "alter ego" of the officer.[2] *Stuart*, 772 F.2d at 1197; *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) ("The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the same entity, the jurisdictional contacts of the one are the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis."). Second, a court may exercise personal jurisdiction over an officer who allegedly committed an intentional tort directed at the forum state. *See, e.g., Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 795 (5th Cir. 2007); *see also Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 917 (Tex. App.—Dallas 2005, no pet.) ("[C]orporate officers are not shielded from exercise of specific jurisdiction for fraudulent or tortious acts for which they may be liable.").

Bell argues both exceptions apply. As to the alter ego exception, Bell maintains the Moawad Group website "almost exclusively" promotes Trevor Moawad and the contact page on the Moawad Group advises interested parties to contact "Trevor Moawad o[r] the Moawad Consulting Group" for more information.[3] Resp. [#11] at 9–10. In *Stuart*, the Fifth Circuit

---

[2] In determining whether a corporation is the alter ego of an individual officer, courts consider the following factors: whether "(1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed or (6) the corporation is merely a sham." *Stuart*, 772 F.2d at 1197 (quoting *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634 (8th Cir. 1975)).

[3] In support of his alter ego argument, Bell points to Texas-based MJP's website which lists "Trevor Moawad," rather than the Moawad Group, as part of MJP's staff. Resp. [#11] at 10. But MJP's decision to highlight Trevor Moawad's services does not speak to whether Trevor Moawad's services are offered on behalf of the Moawad Group.

rejected the plaintiff's alter ego argument where the plaintiff simply alleged trade magazine advertisements in Texas made no reference to the corporate entity, but instead focused entirely on the individual's services as an orthopedic surgeon. 772 F.2d at 1198. Even though the plaintiff's allegations revealed a "blurring of the distinction between [the defendant's] actions in his individual capacity and the actions of [the corporate entity]," the court nevertheless concluded the plaintiff had failed to demonstrate the corporation was the alter ego of the plaintiff. *Id.* Like the plaintiff in *Stuart*, Bell has failed to provide any evidence to establish the presence of the six alter ego factors, including whether the company's finances are comingled with Trevor Moawad's finances or whether the company is merely a "sham." In fact, the record evidence suggests otherwise. Given the Fifth Circuit's guidance in *Stuart*, the Court cannot conclude Bell's minimal factual allegations and conclusory assertions are sufficient to show the Moawad Group is a façade for Bell's interests and activities.

In the alternative, Bell argues the intentional tort exception applies because Trevor Moawad "directly participated in the willful infringement" of his copyright. Resp. [#11] at 9. But Bell's conclusory allegations of willfulness are insufficient to establish the intentional tort exception to the fiduciary shield doctrine applies. Nevertheless, were the Court to entertain Bell's argument—and therefore impute the Moawad Group's contacts with Texas to Trevor Moawad—the Court would still find these contacts, when considered in conjunction with Trevor Moawad's other contacts with Texas, are insufficient to justify the exercise of either general or specific personal jurisdiction over him.

2. **General Jurisdiction**

Bell alleges Trevor Moawad "regularly solicit[s] and conduct[s] business in the state of Texas, and [he] maintains a continuous presence in the state of Texas through long-standing and

ongoing business relationships." Am. Compl. [#10] ¶ 7. However, it is clear Trevor Moawad has not engage in "continuous and systematic" activity in Texas to justify the exercise of general jurisdiction. Trevor Moawad is a resident of Arizona, and there is no evidence Trevor Moawad has ever lived in Texas, owned real estate in Texas, conducted regular business in Texas, or traveled to Texas for recreation. Bell points to a period of time between 2002 and 2006 when Trevor Moawad worked with the Texas A&M women's soccer team. But even if Trevor Moawad's maintained a substantial presence in Texas while working with the Texas-based organization, this four-year stint in Texas falls far short of establishing "continuous" contacts to justify the exercise of personal jurisdiction some eleven years later. As for Bell's allegations regarding Trevor Moawad's sporadic trips to Texas and his occasional work for Texas-based MJP, these contacts are not substantial enough to warrant the imposition of general personal jurisdiction over Trevor Moawad. *See, e.g., Wilson v. Belin*, 20 F.3d 644, 651 (5th Cir. 1994) (concluding that even if the defendant's contacts with Texas were arguably continuous, where they spanned multiple years, they were not substantial enough to subject the defendant to suit in a distant forum with which he had little connection). Finally, as for Bell's allegation that Trevor Moawad, acting through the Moawad Group's social media accounts, directed his activities to Texas by posting the allegedly infringing image, the Court has already concluded that this allegation is insufficient to support a finding of general jurisdiction. *See supra* Section I.A.1. The Court therefore finds these allegations, taken together, do not amount to a prima facie showing of general jurisdiction.

3. **Specific Jurisdiction**

Whether this Court can exercise jurisdiction over Trevor Moawad depends on whether he has purposely directed activities toward Texas or purposely availed himself of the privileges of

conducting activities there. Bell's allegations make clear that Trevor Moawad deliberately engaged in activities in Texas by traveling to Texas to transact business and promote his consulting services.

Nevertheless, Bell's cause of action does not arise out of Trevor Moawad's forum-related contacts. Bell alleges that Trevor Moawad, acting through or in conjunction with the Moawad Group, violated Bell's copyright in *Winning Isn't Normal* by posting a 219-word excerpt from the book on the Moawad Group's social media accounts. Bell does not allege Trevor Moawad posted the image because of the occasional business he conducts in Texas, nor has he shown the image was posted to target Texas or wasa specifically tailored for a Texas audience. It is the plaintiff's burden to prove facts necessary to support the existence of jurisdiction. *Applewhite v. Metro Aviation, Inc.*, 875 F.2d 491, 494 (5th Cir. 1989). Bell has failed to carry his burden in this case. Because the Court finds Trevor Moawad does not have sufficient minimum contacts with Texas, the Court need not discuss the fairness prong of the due process analysis.[4]

## II. Venue

Even if a court lacks personal jurisdiction over a defendant, it may nonetheless transfer the case to "any district or division in which it could have been brought" if that transfer is "in the interest of justice." *See Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013) (quoting 28 U.S.C. § 1406(a)). Section 1406(a) specifically applies when an action "lay[s] venue in the

---

[4] Bell requests that, in the event the Court finds Bell's arguments and evidence insufficient to establish personal jurisdiction over Defendants, the Court grant Bell leave to conduct limited jurisdictional discovery. Mot. Discovery [#13]. For the Court to grant jurisdictional discovery, a plaintiff must make "a preliminary showing of jurisdiction" through "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). "[D]iscovery on matters of personal jurisdiction . . . need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation and citation omitted). Bell's motion does not raise a fact issue that could be solved through further discovery. It is clear from Bell's initial showing that further information on Defendants' contacts with Texas would not strengthen his assertion of specific jurisdiction, because to the extent Defendants purposely availed themselves of the forum, Bell's claims simply do not arise from Defendants' minimum contacts in Texas.

wrong division or district." 28 U.S.C. § 1406(a). Venue is laid in the wrong division when the court lacks personal jurisdiction to hear the case. *See* 28 U.S.C. § 1391(b)(1)–(3)

The decision to dismiss or transfer a case under § 1406(a) lies within the discretion of the Court. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (*Volkswagen II*). Courts consider a number of factors in making this decision, including whether the transfer saves time, energy, and money and the degree to which transfer is more convenient and economical for litigants, witnesses, and the public. *See, e.g., Autoflex Leasing-Dallas I, LLC v. Autoflex LLC*, No. 3:16-CV-2589-D, 2017 WL 713667, at *5–6 (N.D. Tex. Feb. 23, 2017). Courts generally "favor transfer over dismissal." *Scott v. U.S. Army*, No. EP-07-CA-328-FM, 2008 WL 3914835, at *1 (W.D. Tex. June 30, 2008).

Transfer, rather than dismissal, is proper in this case. As noted, Defendants live or are incorporated in Arizona, regularly conduct business in Arizona, and the events giving rise to Bell's claims occurred in Arizona. The transfer facilitates a more expeditious resolution of the case and saves both the parties and the judiciary time and money. The Arizona district court can exercise personal jurisdiction over Defendants, and venue is proper in Arizona. *See* 28 U.S.C. § 1391(b)(1)–(3) (stating venue is proper in a district where (1) the defendant resides, (2) a substantial part of the events giving rise to the claim occurred, or (3) a court can exercise personal jurisdiction over the defendant). The Court therefore transfers this case to the District of Arizona.

## Conclusion

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [#5] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff's Motion for Limited Jurisdictional Discovery [#13] is DENIED; and

IT IS FINALLY ORDERED that this case is TRANSFERRED to the District of Arizona.

SIGNED this the 30th day of June 2017.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE