**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Bell, | No. CV-17-02109-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| The Moawad Group, LLC and Trevor Moawad, d/b/a Moawad Consulting Group, | |
| Defendants. | |

Plaintiff Keith Bell sued Defendants Trevor Moawad and the Moawad Group, LLC after they posted a passage from Plaintiff's book on their social media accounts. The parties have filed cross-motions for summary judgment. Docs. 67, 70. Defendants have also filed a motion for attorneys' fees. Doc. 64. The motions are fully briefed, and no party requests oral argument. For reasons stated below, the Court will deny Defendants' motion for summary judgment, grant in part Plaintiff's cross-motion, and deny without prejudice Defendants' motion for attorneys' fees.

## I. Background.

The following facts are undisputed unless otherwise noted. Plaintiff works in the field of sports psychology and performance. In 1982, he authored and published a book titled *Winning Isn't Normal*. Plaintiff describes the target audience for the book as "[a]nyone who wants to perform better or out-perform the competition." Doc. 68-3 at 8.[1]

---

[1] Citations are to page numbers attached to the top of pages by the Court's ECF

Plaintiff holds a valid copyright registration for the book and continues to offer the book for sale through Amazon.com and his website, keelpublications.com.  Doc. 10-1 at 6; Doc. 71-2 at 2-3; Doc. 71-8.

Defendant Moawad Group is a mental consulting firm based in Scottsdale, Arizona, owned by Trevor Moawad.  The firm does business under the name Moawad Consulting Group ("MCG").  MCG maintains social media accounts with Facebook, Instagram, and Twitter.  Mr. Moawad testified that MCG uses the accounts "as a way for people who followed [MCG] to get to unique insight or inspirational thought[.]"  Doc. 68-4 at 4.  The MCG Twitter page contains a link to MCG's website and the following description:  "In the field of Mental Conditioning we work with the world's most elite talents in sport, business, military, and life to maximize their potential."  Doc. 68-1 at 2.

On May 11, 2016, MCG posted an image on each of its social media accounts containing the following passage:

> Winning isn't normal.  That doesn't mean there's anything wrong with winning.  It just isn't the norm.  It's highly unusual.
>
> Every competition has only one winner.  No matter how many people are entered (not to mention those who failed to qualify), only one person wins each event.
>
> Winning is unusual.  As such, it requires unusual action.
>
> In order to win you must do extraordinary things.  You just can't be one of the crowd.  The crowd doesn't win.  You have to be willing to stand out and act differently.  Your actions need to reflect unusual priorities and values.  You have to value success more than others do.  You have to want it more.  Now, take note!  Wanting it more is a decision you make and act upon -- not some inherent quality or burning inner drive or inspiration.  And you have to make that value a priority.
>
> You can't train like everyone else.  You have to train more and train better.  You can't talk like everyone else.  You can't think like everyone else.  You can't be too willing to join the crowd, to do what is expected, to act in a

system, not to original numbers at the bottom of pages.

socially accepted manner, to do what's "in". You need to be willing to
stand out in the crowd and consistently take exceptional action. If you want
to win, you need to accept the risks and perhaps the loneliness . . . because
WINNING ISN'T NORMAL!!!!!

Doc. 10-1 at 24-28. The image was accompanied by the caption "Great Minds 'Behave'
Differently." *Id.*

The parties agree that the passage in the image is substantially similar to language
on page eight of *Winning Isn't Normal*. Doc. 68 ¶ 3; Doc. 71 ¶ 3; *see* Doc. 10-1 at 4.
The image does not contain an attribution to Plaintiff or a copyright symbol or notice.
Mr. Moawad testified that he found the image by conducting a Google images search on
his phone using the keywords "winning is unusual." Doc. 68-4 at 5, 18. He recalled
hearing this phrase many years earlier when he worked at IMG Academies in Florida. *Id.*
at 8. He testified that he had never seen the passage before or heard of Plaintiff, and his
image search did not produce any indication that the image or its contents were
copyrighted. *Id.* at 8-9, 26-27. After finding the image, Mr. Moawad sent it to MCG
employee Sean Quinn, who posted it on MCG's social media accounts. *Id.* at 3, 13;
Doc. 68-8 at 2. Mr. Moawad thought of the caption "great minds behave differently"
because it "went well with the statement winning is unusual." *Id.* at 6.

Defendants submit screenshots of the results produced by a Google images search
for "winning is unusual" and assert that such a search continues to reveal no indication
that the passage is connected to Plaintiff. Doc. 68-5. Plaintiff disputes this, asserting that
Defendants' screenshots actually contain an image displaying the passage with proper
attribution. Doc. 71-2 at 17. Plaintiff submits screenshots of Google searches that he
performed for the same keywords, which return both images and links that immediately
indicate Plaintiff's association with the phrase. *Id.* at 12, 14.

Defendants did not modify the image before posting it. Doc. 68-4 at 27; Doc. 68-9
at 4. Defendants estimate that the image reached about 3,500 social media accounts
based on the number of "followers" MCG has. *See* Doc. 5-1 at 3. It also appears that the
post was "shared" by at least one MCG follower who has about 100,000 followers of his

own.  *See* Doc. 71-3 at 13-16.  Mr. Moawad testified that Defendants derive no income from their social media accounts, and they derived no income from posting this particular image.  Doc. 68-4 at 29-30; *see also* Doc. 68-9 at 5-6.

Plaintiff testified that the passage displayed in the image "has proven particularly influential in the athletics and other high-performance communities[,]" and the passage "went semi-viral" in 2015 when thousands of unauthorized users posted it on various social media sites.  Doc. 71-2 at 3; Doc. 68-3 at 25, 32.  The passage is available to read for free on Plaintiff's website.  Doc. 68-3 at 14.  Plaintiff has not contacted Google or other search engines to request removal of images containing the passage, but he has pursued individual infringers.  Doc. 68-3 at 33-34.

Plaintiff testified that he saw MCG's posts containing the image "within a few days."  *Id.* at 24.  On December 5, 2016, Plaintiff's counsel sent Defendants a letter notifying them that the image contained copyrighted material.  *Id.* at 30.  Defendants removed the post from each social media account immediately after receiving the letter.  Doc. 68-4 at 29; Doc. 68-9 at 5.

Plaintiff asserts a claim for willful and intentional copyright infringement in violation of 17 U.S.C. §§ 106, 501.  Doc. 10 at 12-13.  He seeks statutory or actual damages in an amount to be proven at trial, profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), attorneys' fees and costs pursuant to § 505, and injunctive relief prohibiting Defendants from further infringement.  *Id.*  Plaintiff seeks summary judgment on his infringement claim, the individual liability of Mr. Moawad, and Defendants' defenses, leaving for trial only the issue of damages.  Doc. 70.

Defendants seek summary judgment on the ground that their use of the image constitutes fair use under § 107.  Doc. 67 at 9-12.  Alternatively, Defendants seek summary judgment on three issues, arguing that (1) Defendants did not willfully infringe, (2) Plaintiff's statutory damages should be limited to $200 because Defendants are innocent infringers who caused no actual damages, and (3) Mr. Moawad is not personally liable.  *Id.* at 6-9, 12-14.

## II.  Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.  Discussion.

"To establish copyright infringement, a plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Loomis v. Cornish*, 836 F.3d 991, 994 (9th Cir. 2016) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

Plaintiff presents a certificate of registration showing that he first published his book in February 1982 and registered it with the U.S. Copyright Office in September 1989.  Doc. 71-8.  When a copyright is registered more than five years after publication, the evidentiary weight accorded to it is "within the discretion of the court[.]" 17 U.S.C. § 410.  Here, however, Defendants present no evidence or argument to dispute Plaintiff's ownership.  The parties agree that Plaintiff's copyright is valid and he owns all rights in the book.

Nor do the parties dispute the second element.  Defendants admit that the passage in the image is substantially similar to original language in Plaintiff's book, and they

admit that they publicly posted it on MCG's social media accounts.  Indeed, neither Defendants' motion nor their response to Plaintiff's motion even addresses these elements.

Plaintiff has shown, as a matter of undisputed fact, that he owns a valid copyright in the book and Defendants copied and published constituent elements of the book that are original.  Plaintiff is therefore entitled to judgment on his copyright infringement claim, unless Defendants can establish fair use or another defense.

### A.    Fair Use.

The Copyright Act provides that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching[,] . . . scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.  "The fair use doctrine 'permits and requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'"  *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175 (9th Cir. 2013) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994)).  In determining whether the use in this case is "fair," the Court must consider four statutory factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

> (2) the nature of the copyrighted work;

> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  These factors are non-exclusive, but "must all be explored, and all the results evaluated together, in light of the purposes of copyright" on a case-by-case basis. *Seltzer*, 725 F.3d at 1175 (citing *Campbell*, 510 U.S. at 577-78).

Although fair use involves mixed questions of law and fact, "it is well established that a court can resolve the issue of fair use on a motion for summary judgment when no

material facts are in dispute." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008); *see also L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 942 (9th Cir. 2002). Moreover, even where there is a factual dispute, the Court may "conclude as a matter of law whether the challenged use qualifies as a fair use" if the Court finds that "after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion[.]" *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1151 (9th Cir. 1986).

### 1. First Factor: Purpose and Character of the Use.

The first factor asks "whether the new work merely supersedes the objects of the original creation, . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579 (internal citations omitted and alterations incorporated). Although transformative use is not "absolutely necessary for a finding of fair use," transformative works "lie at the heart of the fair use doctrine[,] . . . and the more transformative the new work, the less will be the significance of other factors[.]" *Campbell*, 510 U.S. at 579 (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 455 n.40 (1984)).

The undisputed facts establish that Defendants' use of Plaintiff's copyrighted material was not transformative. Defendants posted an excerpt from Plaintiff's book as an inspirational quote in the form of an image. The excerpt was taken almost verbatim from the book, and its point was the same as the language in Plaintiff's book – it conveyed the message Plaintiff developed. The image was not significantly altered from the text in the book; it was dark-colored, standard text on a white background. Moreover, even if the form of the text or the image could somehow be viewed as an alteration of Plaintiff's copyrighted text, Defendants did not make the alterations – they simply copied the image from the Internet. *See N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 617 (S.D.N.Y. 2015) ("[I]t can be argued that no part of the [image combining two historical photographs that Defendants found online through a Google search] constitutes

an original idea on the part of Defendants; some other person first thought to combine the two photographs[.]").

Defendants' only original contribution was the caption "Great Minds 'Behave' Differently." But this brief caption simply rephrases the message conveyed by the passage. It is not the type of commentary that might transform the original work into something new or different. The purpose of both Plaintiff's book and Defendants' social media posts is the same: motivational mental conditioning.

Defendants did not alter or condense the passage, and they offered no original thought, criticism, or commentary on it. *See Weinberg v. Dirty World, LLC*, No. CV 16-9179-GW(PJWX), 2017 WL 5665023, at *6 (C.D. Cal. July 27, 2017) ("[P]osting verbatim copies of a copyrighted work 'with little or no added comment or criticism' does not constitute fair use."). Indeed, Defendants admit that their use was only "nominally transformative." Doc. 67 at 12.

The first factor also considers whether the use was for a commercial or nonprofit purpose. 17 U.S.C. § 107; *see Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 861 (9th Cir. 2017) (noting that a commercial use is presumptively unfair). "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000) (quoting *Harper & Row*, 471 U.S. 539, 562 (1985)).

Defendants do not use the MCG social media accounts to sell products or directly generate revenue, and Plaintiff presents no evidence suggesting that Defendants actually profited from posting the image. But the social media accounts are associated with a commercial enterprise. MCG's logo, website, and business description are prominently displayed on the accounts. Mr. Moawad testified that the purpose of the accounts was simply to share daily or weekly motivational inspiration. Defendants posted primarily inspirational quotes on the accounts, but they also shared information about clients and

athletes they know. Doc. 71-1 at 15, 38. And Mr. Moawad acknowledged that the accounts "could be seen as a reflection of" MCG's brand. Doc. 71-1 at 37-38. Thus, the accounts could be viewed as marketing MCG to its followers – a setting in which "profit is ill-measured in dollars." *Worldwide Church of God*, 227 F.3d at 1117.

The Court cannot reach a clear conclusion on the first factor. Defendants' use lacked any transformative qualities, but there is a dispute of fact on whether the use was primarily for MCG marketing purposes or primarily for dispersing inspirational information, a noncommercial use. *See N. Jersey Media Grp.*, 74 F. Supp. 3d at 618 (finding a dispute as to whether defendant's posting of an image on a Facebook page associated with its business was for the commercial purpose of promoting the business or the expressive purpose of commenting on historical events).

### 2. Second Factor: Nature of the Copyrighted Work.

The second factor "turns on whether the work is informational or creative." *Worldwide Church of God*, 227 F.3d at 1118. The scope of fair use is greater with respect to informational works because "[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row*, 471 U.S. at 563. This factor also considers whether the original work was published: "Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003). Thus, if a work has appeared on the Internet before a defendant copies it, this strengthens a finding of fair use. *See id.*; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007).

The parties agree that Plaintiff's work had been published, the passage was widely available on the Internet, including Plaintiff's own website, and the particular image Defendants used had appeared on the Internet before they used it. This weighs in favor of finding fair use.

But the parties present differing opinions as to whether the work is creative or informational. Defendants argue that the book is informational because it is non-fiction

- 9 -

and "discusse[s] general concepts about sports psychology and motivation that are not separately copyrightable (e.g., 'winning is unusual')." Doc. 67 at 11. Plaintiff counters that the work is creative because although it "is non-fiction, Defendants believed it was unique, interesting, and motivational." Doc. 70 at 9 (citing Doc. 71-1 at 15-16; Doc. 71-5 at 16). Mr. Moawad described the passage as an "interesting insight into . . . a way to succeed," and he viewed it as "more motivational" than informational. Doc. 71-1 at 15-16.

Plaintiff's work cannot neatly be characterized as creative or informational. It has elements of both. The work is non-fiction and the passage contains some general information known in the field of sports psychology, but it also reflects creative thought and the statement of ideas in a way that is memorable, appealing, and motivational. *See Harper & Row*, 471 U.S. at 547 ("[N]o author may copyright facts or ideas[,]" but the "[c]reation of a nonfiction work, even a compilation of pure fact, entails originality."). Defendants did not limit their post to solely the "information." They copied the entire passage with Plaintiff's word and stylistic choices.

The Court does not find the distinction between informational and creative works to be particularly helpful in this case, but it is significant that the passage is readily available on the Internet. The Court concludes that the second factor weighs slightly in favor of fair use.

### 3.    Third Factor:  Amount of Copyrighted Work Used.

The third factor asks whether the "amount and substantiality" of the portion of the work used are reasonable "in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586-87 ("[T]he extent of permissible copying varies with the purpose and character of the use[.]"). Defendants argue that the use was reasonable because they shared only 219 words of a 72-page book. Doc. 67 at 11. Plaintiff responds that although the passage is small in comparison to the size of the work, it is substantial because it constitutes "the heart" of the work. Doc. 70 at 10 (citing *Harper & Row*, 471 U.S. at 565; *Elvis Presley Enters. v. Passport Video*, 349 F.3d 622 (9th Cir. 2003)). The Court agrees with Plaintiff.

Defendants do not dispute that the particular passage they used is the most well known and memorable passage from the book. Indeed, they point out that the passage "went viral" on the Internet. Defendants simply argue that the passage is insubstantial because it consists of only 219 words.

In *Harper & Row*, the Supreme Court noted that although the defendant copied a small portion in relation to the overall work, it copied verbatim the "most interesting and moving parts" and prominently featured the excerpts in its article. 471 U.S. at 565-66. Defendants correctly point out that the work in *Harper & Row* was unpublished, an important factor weighing against fair use. Doc. 75 at 10. But in *Elvis Presley*, the Ninth Circuit concluded that relatively short clips could be substantial even if they had been published previously. 349 F.3d at 630; *see also L.A. News Serv. v. Tullo*, 973 F.2d 791, 798 (9th Cir. 1992) (finding that the third factor weighed against fair use because although the defendant "copied only a small part of the raw footage shot by [the plaintiff], it was the most valuable part of that footage").

The third factor weighs against fair use because Defendants used the most notable portion of Plaintiff's book, but does not weigh heavily because Defendants used only a short passage.

### 4. Fourth Factor: Extent of Market Harm.

The fourth factor considers "the extent of market harm caused by the infringing activity and whether unrestricted and widespread conduct of the sort engaged by the defendant . . . would result in a substantially adverse impact on the potential market for the original." *Disney Enters.*, 869 F.3d at 861 (quoting *Campbell*, 510 U.S. at 579) (internal quotation marks omitted). This factor "is undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566. The Court must consider potential harm to the market for the original and for derivative works. *Campbell*, 510 U.S. at 590. The Ninth Circuit has held that when a defendant's use is non-transformative and for commercial gain, the Court may "presume likely market harm." *Disney Enters.*, 869 F.3d at 861 (citing *Leadsinger*, 512 F.3d at 531).

Defendants argue that their posts caused no harm, and widespread posting of the passage has already occurred with no adverse impact on the market for Plaintiff's book. Doc. 67 at 10. Plaintiff argues that he need not prove actual market harm resulting from Defendants' posts, and asserts that the widespread unauthorized posting of the passage has adversely affected the market for his book and derivative works such as posters and t-shirts displaying the passage. Doc. 70 at 10-11. But Plaintiff submits no evidence to support these assertions. Plaintiff has identified no specific business he lost as a result of Defendants' posts (Doc. 71-3 at 12), and he testified that he does not have records of all of his book sales (Doc. 68-3 at 20). Nor does the record contain evidence regarding Plaintiff's poster or t-shirt sales or revenue from his consulting work.

Nonetheless, if Plaintiff can show that the use was commercial, it might be appropriate to presume likely market harm under the circumstances of this case – where Defendants' use amounted to wholesale copying of a memorable passage of Plaintiff's book and publishing it without attribution for commercial gain. *See Disney Enters.*, 869 F.3d at 861 ("Because the district court concluded that [the defendant's] use was commercial and not transformative, it was not error to presume likely market harm."). The Court finds that this factor is neutral because Plaintiff has shown no actual harm, but the circumstances may warrant presumed harm depending on the outcome of a disputed issue.

### 5. Fair Use Conclusion.

Defendants used an almost verbatim passage from Plaintiff's copyrighted book without altering or adding to the passage in any significant way. But the passage was widely available online, Plaintiff presents no evidence of actual market harm, and there is a dispute of fact as to whether the posts were for a commercial purpose. Given this factual dispute, and the fact that the remaining considerations do not clearly point in either direction, the Court cannot conclude as a matter of law that a reasonable jury could reach only one conclusion. The Court therefore will deny summary judgment for Plaintiff on Defendants' fair use defense.

### B.    Implied License and Waiver.

Plaintiff moves for summary judgment on Defendants' affirmative defenses of implied license and waiver.  Doc. 70 at 11-12.

### 1.    Implied License.

"Courts have found implied licenses only in 'narrow' circumstances where one party 'created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it.'"  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).  Plaintiff argues that the record contains no evidence suggesting that he created the work at anyone's request or handed it over with the intent that they copy it.  Doc. 70 at 12.  Defendants do not respond to this argument.  *See* Doc. 75.  The Court will grant summary judgment for Plaintiff on the implied license defense.

### 2.    Waiver.

"[W]aiver or abandonment of copyright 'occurs only if there is an intent by the copyright proprietor to surrender rights in his work.'"  *A&M Records*, 239 F.3d at 1026 (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* ¶ 13.06 (2000)).  Defendants argue that the following facts are sufficient to create a genuine dispute as to whether Plaintiff impliedly waived his rights to the passage:  (1) Plaintiff shares the passage for free online, (2) the image went semi-viral in 2015, (3) Plaintiff never contacted search engines like Google to request that they remove images containing the passage, and (4) Plaintiff delayed seven months in notifying Defendants of the infringement and requesting that they take down the image.  Doc. 75 at 11.  In support, Defendants cite two cases dealing with waiver in the context of breach of contract claims.  *See Groves v. Prickett*, 420 F.2d 1119, 1125-26 (9th Cir. 1970); *Insight Pub. Sector, Inc. v. Proteam Sols., Inc.*, No. 2:14-CV-2529-HRH, 2016 WL 6648167, at *6 (D. Ariz. Nov. 10, 2016).  Defendants provide no legal authority or argument to support their assertion that the four facts they cite are sufficient to establish an implied *copyright* waiver.

Plaintiff argues that even if the law recognizes an implied copyright waiver, evidence in the record shows that he has not waived his rights because he conspicuously marks his book, website, and all derivative works with copyright symbols, and he pursues infringers. Doc. 71-2 at 2-3. The Court agrees with Plaintiff. Defendants present no evidence suggesting that Plaintiff had an intent to surrender rights to his work. Nor do they point to any "overt act" manifesting an intent to surrender. *See* William F. Patry, 2 *Patry on Copyright* § 5:157 (2018). Plaintiff is entitled to summary judgment on the waiver defense.

### C.     Mr. Moawad's Liability.

Mr. Moawad asserts that he cannot be held personally liable for MCG's infringement and seeks summary judgment on the claims against him. Doc. 67 at 12. Plaintiff cross-moves for summary judgment on this issue. Doc. 70 at 6-7. The parties agree that the Moawad Group is a properly organized limited liability company under the law of Arizona; it is a small business and had four employees including Mr. Moawad at the time the image was posted; Mr. Moawad is the president and sole owner; and he was acting in the scope of his employment when he found the image at issue and asked another employee to post it. *See* Doc. 5-1 at 1; Doc. 68 at 4; Doc. 71 at 5.

The Ninth Circuit has explained that a "corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). The court of appeals has noted that cases imposing personal liability on officers "typically involve[] instances where the defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the challenged corporate activity." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 n.10 (9th Cir. 1989) (quoting *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 907 (1st Cir. 1980)). Courts in this Circuit have applied these principles in copyright cases. *See Urban Accessories, Inc. v. Iron Age Design & Imp., LLC*, No. C14-1529JLR, 2015 WL 1510027, at *4 (W.D. Wash. Apr. 1, 2015) ("Where a corporation or

similar entity is the alleged infringer, the plaintiff may also hold individual corporate officers, shareholders, and employees personally liable for the corporation's infringements by showing that such individuals are a moving, active conscious force behind the corporation's infringement, regardless of whether they are aware that their acts will result in infringement.") (internal quotation marks omitted and alterations incorporated); *Blue Nile, Inc. v. Ideal Diamond Sols., Inc.*, No. C10-380Z, 2011 WL 3360664, at *2 (W.D. Wash. Aug. 3, 2011) ("'[I]t is well established that a corporate officer will be liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in infringement.'") (quoting *Foreverendeavor Music, Inc. v. S.M.B., Inc.*, 701 F. Supp. 791, 793-94 (W.D. Wash. 1988)); *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1115 (C.D. Cal. 2010); *see also* William F. Patry, 5 *Patry on Copyright* § 17:183 (2018) ("Copyright is a strict liability tort, and thus all individuals who participate in the infringement are jointly and severally liable. As a result, there is no corporate veil.").

Mr. Moawad asserts that the Ninth Circuit "has generally only extended personal liability to individuals for a corporation's copyright infringement when there is 'willful or intentional' conduct resulting in financial benefit to the corporation." Doc. 67 at 13 (citing *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 941 (9th Cir. 2011); *A&M Records*, 239 F.3d at 1022). But the cases he cites involve secondary liability of parties that did not directly commit the infringing acts but facilitated infringement by third parties, pursuant to the doctrines of contributory and vicarious copyright infringement. *See Louis Vuitton Malletier*, 658 F.3d 936 (defendants supplied server space, bandwidth, and IP addresses to persons who maintained websites selling merchandise that infringed on plaintiff's copyrights); *A&M Records*, 239 F.3d 1004 (defendant designed a system that facilitated the transmission of copyrighted MP3 files between and among users). Plaintiff does not allege contributory or vicarious liability.

Plaintiff alleges that Mr. Moawad directly committed the infringement on behalf of MCG. *See* Doc. 10.

Mr. Moawad also cites *Broadcast Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d 1120, 1133 (D. Ariz. 2013), and *Chi-Boy Music v. Towne Tavern, Inc.*, 779 F. Supp. 527, 530 (N.D. Ala. 1991), which found business owners jointly and severally liable for copyright infringement because they had the right to supervise the infringing activity and a direct financial interest in the activities. These cases, too, involved vicarious liability. They are inapplicable here.

There is no genuine dispute that Mr. Moawad was "a moving, active[,] conscious force behind" the infringement. *Urban Accessories*, 2015 WL 1510027, at *4. Mr. Moawad conducted the online image search, found the infringing image, thought of a caption for it, and sent it to an employee with express directions to post the image on MCG's three social media accounts. This is sufficient to establish that Mr. Moawad was the "guiding spirit" and "central figure" behind the infringement. *Davis*, 885 F.2d at 524 n.10. Defendants have come forward with no evidence to dispute Mr. Moawad's direct involvement and control. Plaintiff is therefore entitled to summary judgment on this defense.

### D. Damages and Willfulness.

If Plaintiff succeeds in defeating the fair use defense, Defendants will be jointly and severally liable for copyright infringement and Plaintiff will be entitled to damages. *See* 17 U.S.C. § 504. Plaintiff could recover either statutory damages or his "actual damages and any additional profits of the infringer[.]" *Id.* Statutory damages are between $750 and $30,000, "as the court considers just." § 504(c)(1). However, if the court finds "that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." § 504(c)(2). Conversely, if the court finds that the "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in

its discretion may reduce the award of statutory damages to a sum of not less than $200." *Id.*

Plaintiff's amended complaint alleges that Defendants' infringement was "willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights." Doc. 10 at 12. Defendants seek summary judgment on the issue of willfulness, arguing that Plaintiff has no evidence to support such a finding. Defendants also ask the Court to grant summary judgment on their "innocent infringer" defense under § 504(c)(2) and reduce Plaintiff's statutory damages to $200. Plaintiff argues that there are genuine disputes of fact precluding summary judgment on both issues. Doc. 70 at 13-17.

### 1. Willfulness.

To prove willfulness, "the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017). A plaintiff may make this showing with evidence that the defendant "adopted a reckless policy with regard to copyright infringement[.]" *Id.* The willfulness determination is generally inappropriate for summary judgment because it involves an assessment of a defendant's state of mind. *See Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016).

Mr. Moawad testified that he did not recall seeing any indication of ownership or copyright when he conducted the image search and found the image at issue. He did not attempt to determine the author of the passage before posting it because he "did not know that [he] needed to do that[,]" and he believed the image could be shared because it was accessible on Google, contained no copyright symbol or attribution, and had been shared by others on social media. Doc. 68-4 at 13-14. He testified that he searched for content to post on MCG's social media accounts weekly, and MCG's practice when it found images containing unattributed text was to post them without searching for potential authors. *Id.* at 17; Doc. 71-1 at 31-32. He further explained that MCG posted similar quotes and images frequently, but had never been asked to take a post down until Plaintiff

contacted MCG. Doc. 71-1 at 45. Defendants removed the posts immediately upon receiving Plaintiff's letter.

Plaintiff presents evidence that Google indicates next to images displayed by its search function that "[i]mages may be subject to copyright." Doc. 71-7. Plaintiff also submits evidence that searches of keywords from the passage readily show that Plaintiff is the author. Doc. 71-2 at 4-5. Plaintiff argues that Defendants knew that the passage was authored by someone, and their practice of making no attempt to determine who authored the quote or whether it was subject to copyright constitutes reckless disregard for Plaintiff's rights as a copyright holder. Doc. 70 at 12-15 (citing *Friedman*, 833 F.3d at 1186; *Unicolors*, 853 F.3d at 991).

These facts present a genuine dispute making summary judgment inappropriate. In *Unicolors*, a large international retailer used a copyrighted fabric design. 853 F.3d 980. The Ninth Circuit upheld a jury verdict finding that the retailer's infringement was willful because there was evidence that the retailer "adopted a reckless policy with regard to copyright infringement because it made no attempt to check or inquire into whether any of the designs it used in its apparel were subject to copyright protections." *Unicolors*, 853 F.3d at 991. Moreover, the retailer kept "thousands of fabric swatches at its design studio that it ha[d] purchased from art studios or taken from vintage clothing remnants[,]" which its designers used to create apparel designs, and the retailer had "a general awareness that fabric designs may be copyrighted" but took no "affirmative action to determine if the specific designs" it used were copyrighted. *Id.*

In *Friedman*, the Ninth Circuit reversed the district court's grant of summary judgment on the issue of willfulness because "a jury could reasonably conclude that [the defendant's] approval procedures amounted to recklessness or willful blindness with respect to [the plaintiff's] intellectual property rights." 833 F.3d at 1186. The case involved a music merchandising company that used a photographer's copyrighted photographs of the hip hop group Run-DMC on its merchandise. The merchandising company sent approval forms directly to musical artists seeking their approval, but did

not inquire whether the images they sought to use were subject to copyright or other restrictions. The court explained: "Given an approval process that never explicitly asks about copyrights at all, a jury could reasonably conclude that Live Nation's reliance on the artists who were the subjects of the photographs at issue to clear photographic rights, rather than on the photographers who took them[,] . . . amounted to recklessness or willful disregard, and thus willfulness." *Friedman*, 833 F.3d at 1186.

Defendants argue that *Unicolors* and *Friedman* are distinguishable because the defendants in those cases were "large, sophisticated entities that used images or designs and exploited them for profit without verifying whether the images or designs were protected." Doc. 75 at 5. Although Defendants' size and sophistication certainly might be relevant at trial, the Court is not persuaded that this distinction precludes a jury from finding that Defendants' policy amounted to reckless disregard for Plaintiff's rights. *See D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990) (affirming the lower court's finding after trial that defendants were innocent infringers in part because defendants "lacked 'the sophistication or level of understanding' to prompt an inquiry into the source of the unmarked goods").

The Court will deny Defendants' motion for summary judgment on the issue of willfulness because Plaintiff has presented evidence from which a jury could find that Defendants had a reckless policy with respect to copyright infringement, and thus acted willfully.

## 2. Innocent Infringer Defense.

The Court will deny Defendants' motion for summary judgment on the "innocent infringer" defense for the same reasons it denies the motion with respect to willfulness. Under § 504(c)(2), "where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." 17 U.S.C. § 504(c)(2).

The Court agrees with Defendants that Plaintiff has presented no evidence suggesting that Defendants were actually aware that their acts constituted infringement. The Court also agrees that Defendants have presented strong evidence supporting a finding of innocence. But based on the evidence discussed above regarding Defendants' practice of not investigating possible copyright protections, a factfinder could conclude that Defendants had "reason to believe" that publicly posting an unattributed creative passage that they did not write may have infringed on someone's rights. Plaintiff has therefore presented evidence sufficient to create a triable issue on the innocent infringer defense.

**IV.  Motion for Attorneys' Fees.**

Defendants have filed a motion requesting $21,842.22 in attorneys' fees pursuant to 17 U.S.C. § 1203(b). Doc. 64. A party requesting an award of attorneys' fees must show that it is (a) eligible for an award, (b) entitled to an award, and (c) requesting a reasonable amount. *See* LRCiv 54.2(c).

Under 17 U.S.C. § 1203(b)(5), the Court "in its discretion may award reasonable attorney's fees to the prevailing party" in an action brought under § 1201 or § 1202. Plaintiff's complaints included a claim under § 1202(b), alleging that Defendants "removed copyright management information from Plaintiff's copyrighted work without Plaintiff's permission and/or distributed the unauthorized copies of Plaintiff's work with actual and/or constructive knowledge that authorship and copyright notice information had been removed or altered without Plaintiff's permission." *See* Docs. 1, 10. In the Court's pre-summary-judgment conference with the parties on April 13, 2018, counsel for Plaintiff explained that Plaintiff was no longer pursuing the § 1202 claim. The Court accordingly dismissed the claim with prejudice. Doc. 63. Defendants argue that they are entitled to fees under § 1203(b)(5) as the prevailing party on this claim.

Defendants acknowledge that the Court's order dismissing the § 1202 claim did not resolve this entire action, but they filed the motion for attorneys' fees "in an abundance of caution given the lack of clarity regarding the deadline to file under Fed. R.

Civ. P. 54 in a dismissal with prejudice of less than all pending claims." Doc. 64 at 1 n.1. Plaintiff argues that the Court should decline to rule on the motion until the remaining claim has been finally adjudicated and the Court can determine the overall prevailing party in this case. Doc. 69.

Plaintiff's remaining claim is for copyright infringement in violation of 17 U.S.C. §§ 106, 501. The Court may award attorneys' fees to the "prevailing party" on this claim pursuant to § 505. Thus, distinct statutory sections govern the entitlement to attorneys' fees for the two claims, but the factors that courts consider under these sections are the same. *Wall Data Inc. v. L.A. Cty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006) ("A district court may consider (but is not limited to) five factors in making an attorneys' fees determination pursuant to § 505. These factors are (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) reasonableness of losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence."); *Unicom Sys., Inc. v. Farmers Grp., Inc.*, 405 F. App'x 152, 155 (9th Cir. 2010) (lower court did not abuse its discretion in considering the same factors with respect to sections 505 and 1203(b)(5)); *see also The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003) ("[A] party entitled to attorney's fees as a prevailing party on a particular [copyright] claim, but not on other claims in the same lawsuit, can only recover attorney's fees incurred in defending against that one claim or any 'related claims.'").

The Court agrees with Plaintiff that it is most efficient to delay consideration of applications for attorneys' fees until both claims have been resolved. Defendants' motion for attorneys' fees will be denied without prejudice. Defendants may refile the motion after final adjudication of the remaining claim.

**IT IS ORDERED**:

1.  Defendants' motion for summary judgment (Doc. 67) is **denied**.

2.  Plaintiff's motion for summary judgment (Doc. 70) is **granted** with respect to Plaintiff's ownership of a valid copyright in the book, Defendants'

copying of original constituent elements of the book, and Defendants' defenses of waiver and implied license. The motion is **denied** in all other respects.

3.     Defendants' motion for attorneys' fees (Doc. 64) is **denied** without prejudice to refiling after all claims have been adjudicated.

4.     The Court will schedule a telephone conference with the parties to set a trial date for the remaining issues.

Dated this 4th day of September, 2018.

_David G. Campbell_
David G. Campbell
Senior United States District Judge